## HARMON v. COLUMBIA & GREENVILLE RAILROAD COMPANY.

A railroad company under a right given in its charter to "let or farm out all or any of their exclusive right of transportation of persons, merchandise, and produce, with their privileges," leased its road to another company. *Held*, that the lessor did not, by leasing its road, relieve itself from its obligations to the public, and that it was liable for cattle negligently killed by a train of cars operated by the lessee.

Before WALLACE, J., Richland, July, 1887.

The appeal in this case was from the following order:

That case of the Chester Bank against the railroad was heard before me, and this same question to some extent was argued, and I had some distinct views on it at that time. The argument amounts to this, that when the State charters a railroad company, and the railroad company accepts the charter, that charter is a stipulation, a contract between the parties; that contract the railroad company has no right to transfer to another and thus relieve itself from responsibility, unless in the contract itself there are terms which authorize such transfer. That is the argument of Mr. Crawford. They made it a ground of appeal that I refused so to charge. The Supreme Court held, as I state, that when there is a charter of a railroad, that charter contains a stipulation or contract which binds both sides. That old Dartmouth

College case has been accepted as law, having just recently been called in question, but is still recognized here as a legal principle. If that contract between the parties and the State has terms embodied in it leaving the company to transfer its right under that charter to somebody, of course it has the power under that charter to do it. Whenever it does that, the party to whom transferred assumes all obligations and responsibilities and rights under that charter, and the original party is discharged. That is the rule, no doubt about it.

It is brought to my attention in this case that in the charter of the Greenville & Columbia Railroad, granted by the legislature and accepted by them, there is a provision giving them the right to "farm out" all their right of transportation. "Farm out" is an old phrase; in lieu of that old phrase we now say "lease"; we use the term "farm out" in revenue, which means "lease"; we say "rent," which is an ambiguous term; I rent my land, and the lessee, he rents my land. This phrase "farm out" has a legal definition, and means the right to use, occupy, and enjoy. If the Greenville & Columbia Railroad Company has the right to lease, and has leased, has the right to farm out, and has farmed out—has the right under the charter, that is an end of the matter. The clause read from the charter says they may do that very thing—that they may farm out. The proof is, they have farmed out; Mr. Harmon says he had heard that the Richmond & Danville Railroad was running the cars on this road—operated the road.

Under the principles that I state they are running the road, and they are responsible for the consequences of their own act. The Greenville & Columbia Road, the old company, is discharged under that section in the charter. If that provision were not there, the Columbia & Greenville Railroad would be bound by the contract for the tortious act of the Richmond & Danville Railroad in operating the road; but there is that section, there is that proviso, and I must so hold, that the Columbia & Greenville Railroad would not be responsible after the Richmond & Danville Railroad began to operate the road, after leasing it from the Columbia & Greenville Railroad under that section of the charter.

I only rule in regard to those alleged tortious acts that have occurred since the control and management of the road by the Richmond & Danville Railroad Company.

On motion of defendant's attorney, it is ordered that a non-suit be granted.

*Mr. Andrew Crawford*, for appellant, *cited* 11 *Stat.*, 353 ; 26 *Vt.*, 717 ; 20 *Ill.*, 385, 624 ; 22 *Id.*, 337 ; 10 *Gray*, 103 ; 8 *Allen*, 438 ; 121 *Mass.*, 134 ; 17 *Wall.*, 445 ; 80 *N. Y.*, 29 ; 13 *N. E. Rep.*, 65 ; 4 *S. W. Rep.*, 156 : 10 *N. W. Rep.*, 594 ; *Pierce Rail.*, 244 ; 70 *Ga.*, 464 ; 1 *Redf. Rail.*, 590 ; 101 *U. S.*, 83 ; 17 *How.*, 39 ; 8 *N. E. Rep.*, 859. Also 25 *S. C.*, 216, in connection with 12 *Stat.*, 440.

*Mr. J. C. Haskell*, contra, *cited* 17 *Wall.*, 445 ; 1 *Redf. Rail.*, 619, note ; 2 *Lacy Dig.*, 543, ¶ 271 ; *Wood Rail.*, 1687, 1688 ; *Angel Car.*, 70, note *b* ; *Sher. & Redf. Neg.*, 61.

April 3, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This was an action brought by the plaintiff to recover damages for the alleged killing of certain of his cattle by the negligence of the defendant company in running its trains. There was some testimony of a very indefinite character tending to show that the defendant company had leased its road to the Richmond & Danville Railroad Company, which latter company was operating the road at the time of the alleged killing of the plaintiff's cattle. The Circuit Judge granted a motion for non-suit upon the ground that after the lease of the road the defendant could not be held liable, and from this judgment of non-suit the plaintiff appeals upon the several grounds set out in the record, which need not be repeated here, as the sole question for us to determine is whether the defendant is relieved from liability by its voluntary lease of its road to another company. While the testimony as to the fact of the lease is not very full or clear, yet the counsel for respondent has, very properly, waived any objection on that ground, for the purpose of presenting squarely the legal question involved.

It is not to be denied that there is some conflict of authority

in the different States as to this question; but we think that the weight of authority, as well as of reason, is in favor of the view contended for by the appellant. When a railroad company accepts a charter, it assumes the performance of all the duties to the public which are imposed upon it by the charter or the general laws of the State, and it cannot be permitted to escape from the obligations thus imposed upon it by transferring its chartered rights and privileges either to an individual or to another corporation. A corporation must, of necessity, always act through individuals, and whether such individuals are called its officers or agents, or its lessees, cannot affect the question of its liability to perform the obligations which it has incurred in consideration of the grant of its chartered rights and privileges. It cannot be permitted to enjoy the benefits conferred by its charter without incurring the responsibilities incident thereto.

As was said in one of the cases, if it were otherwise, a railroad company, by leasing its road to irresponsible persons, might enjoy all the benefits conferred by its charter, and practically leave the public generally, as well as individuals, without any of the protection which the obligations imposed upon the company by its charter, as well as the general law of the State, were designed to afford. Accordingly we find it laid down by Mr. Justice Davis in the case of *Railroad Company* v. *Brown* (17 *Wall.*, at page 450), as "the accepted doctrine in this country, that a railroad corporation cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the State by a voluntary surrender of its road into the hands of lessees." This doctrine was recognized and affirmed by this court in *National Bank* v. *Railway Company* (25 *S. C.*, 222), although the court in that case, not because any doubt was entertained as to the soundness of the doctrine just laid down, did state, merely as an additional reason for the conclusion there reached, that the contract there was made with the lessor, and not with the lessee. The cases cited by the counsel for appellant in his argument here show that the courts of many of our sister States have adopted the same view.

The Circuit Judge seems to rest his conclusion upon the ground that inasmuch as under the charter of the defendant company

it has power to lease its road, it follows necessarily that when the road is leased the company is released from all its obligations to the public and to individuals, and these obligations then rest solely upon the lessee. We cannot accept this view. It rests upon the idea that inasmuch as the defendant company incurs these obligations in exchange, as it were, for the chartered rights and privileges conferred by the legislature, when such rights and privileges are transferred to another by the consent of the legislature, the corresponding obligations are likewise transferred to such other person or corporation. This, at first view, seems plausible, and is the view adopted in some of the States. But it rests upon the unfounded assumption that the defendant company has transferred *all* of its chartered rights and privileges to the Richmond & Danville Railroad Company. We understand the testimony as tending to show, and the concession of counsel to be, simply that the defendant company has leased its road to the Richmond & Danville Railroad Company, and not that it has transferred all of its chartered rights and privileges to that company. On the contrary, this very case necessarily implies that the defendant still maintains its corporate organization and existence, and instead of running its road itself directly, has bargained with another company to run it for a compensation, as we must suppose. The defendant company, therefore, in reality still enjoys the benefits of its charter, and cannot be permitted to escape its corresponding obligations. What would be the effect of an absolute transfer of all of its chartered rights and privileges by a sale made under proper authority, is not the question before us. The fact, therefore, that the defendant company is authorized by its charter (act of 1845, 11 *Stat.*, 328) "to farm out," or lease, its road to another company, and that it has done so, does not exempt it from responsibility in the absence of any provision granting such exemption; and there is no such exemption in defendant's charter.

The counsel for respondent in his argument here has attempted to draw a distinction between the liability of a lessor for an injury sustained by reason of some omission of duty resting upon the lessor, as, for example, from the defective condition of the track or of a bridge existing at the time of the lease, and an injury

arising from some negligence of the lessee's servants in running the trains. We see no ground for such a distinction, which really rests upon a denial of the principles above laid down. If, as we have seen, the defendant company cannot escape the obligations which it assumes in accepting its charter by leasing its road to another, then, whether the injury complained of arises from a defective track, or from carelessness in running the trains, can make no difference. In both instances the obligations assumed by the defendant company have been violated, and it must bear the responsibility. The fact that the defendant company has found it more convenient or more profitable to exercise its corporate rights through its lessee rather than by its own officers and agents, cannot relieve it from the performance of its corresponding obligations.

Whether the plaintiff may not have been entitled to elect to proceed against the lessee as the person or corporation actually doing the act complained of, or whether the defendant company may not be entitled to have recourse upon its lessee in case it should be held liable to the plaintiff in this action, are questions which do not arise upon this record, and have not, therefore, been considered.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.