ROSA S. STODDER, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Permission given by one railroad company to another to run its trains over the track of the former — when the former company is liable to a passenger injured upon the train of the latter — evidence as to the subsequent condition of the road.*

An action was brought to recover damages for injuries sustained by the plaintiff, who was a passenger upon a train belonging to the New Jersey and New York Railroad Company, while running over a railroad track, near Nanuet Junction, belonging to the defendant railroad. The injury was caused by the defective condition of the switch, or the negligence in its management. Upon the trial it appeared that the defendant allowed the New Jersey and New York Railroad to

run its trains over the defendant's track at this place, and that there was at this place a switch, which was maintained by the defendant, and that the defendant employed the persons who looked after it, the New York and New Jersey Company paying to it eighteen dollars a month towards the cost of maintaining the switch. The defendant claimed that it was not liable to the plaintiff, on the ground that she was not a passenger on the defendant's road, but was present thereon as a mere licensee and not in pursuance of any contract.

*Held*, that the court did not err in charging the jury that the defendant owed the plaintiff the duty of keeping its switch in a safe condition, nor in charging that if the negligence of the switchman caused the accident the defendant was liable. *Smith* v. *The New York and Harlem Railroad Company* (19 N. Y., 127); *Thomas* v. *Winchester* (6 id., 397) followed.

A railway switch, which is either defective in construction or out of repair, is intrinsically dangerous to the lives of passengers transported over that portion of the track upon which the switch is situated, and where it must be used in order to regulate the movement of trains.

The question as to the admissibility of evidence in regard to the condition of the switch some time after the accident, considered.

Appeal from a judgment in favor of the plaintiff, entered on January 24, 1887, in the office of the clerk of the city and county of New York, upon the verdict of a jury rendered at the New York Circuit, and also from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Charles Steele*, for the appellant.

*Charles W. Gould*, for the respondent.

Bartlett, J. :

The accident which gave rise to this action occurred to a train belonging to the New Jersey and New York Railroad Company, while running over a railroad track near Nanuet Junction, in Rockland county, in this state, belonging to the New York, Lake Erie and Western Railroad. The latter corporation allowed the New Jersey and New York Railroad Company to run its trains over the Erie track at this place. There was a switch at this point, the defective condition of which, or the mismanagement of which, is alleged to have caused the accident. This switch was maintained by the defendant corporation, which employed the persons who looked after it. The New York and New Jersey Railroad Company paid the defendant corporation eighteen dollars a month toward the

cost of maintaining the switch. This appears to have been the only compensation received by the Erie Company for the use of its track or the maintenance of the switch. The plaintiff was a passenger on a train coming from Spring Valley to Jersey City. As this train approached the switch, which has been mentioned, at Nanuet Junction, it should have left the Erie track, and, turning to the right, have run southward on to the New Jersey and New York line. The switch was apparently set so as to take it in this direction. The engine and tender and the forward truck of the passenger car, in which car the plaintiff was riding, passed the switch properly and took the right track, but the rear truck of the passenger car instead of leaving the Erie line at the switch, as it should have done, continued to run along upon the Erie track. As the Erie track and the New Jersey and New York tracks diverge abruptly from each other at this point, the result was that the passenger car broke loose from the rest of the train, and was thrown over an embankment some fifteen feet in height.

We have carefully examined the evidence, and think the proof sufficed to warrant the jury in finding that the accident was due either to the defective condition of the switch, or to negligence in its management. In either event, however, the defendant denies that it is liable to the plaintiff, inasmuch as she was not a passenger on the defendant's road, but was present thereon as a mere licensee and not in pursuance of any contract.

So far as this point is concerned, the case appears to be indistinguishable from *Smith* v. *The New York and Harlem Railroad Company* (19 N. Y., 127, 129). In that case the plaintiff's husband, an engineer, employed by the New York and New Haven Railroad Company, was killed by an accident to his train, while running over the tracks of the New York and Harlem Railroad, in consequence of the misplacement of a switch upon the latter road through the negligence of a switch-tender employed by the Harlem company. There was an arrangement between the two companies, whereby, for a certain compensation, the New York and Harlem Railroad Company gave the New York and New Haven Railroad Company the right to run trains over its tracks, and provided switch men and flagmen along that portion of the line. The question arose whether, under these circumstances, the New York and Harlem

Railroad Company was liable to any one except the New York and New Haven Railroad Company, with which its contract was made. The Court of Appeals held that, inasmuch as death or great bodily harm was a natural consequence of negligence in the management of a railway, the defendant was liable to any one lawfully traveling over its road. This decision was based upon the leading case of *Thomas* v. *Winchester* (6 N. Y.; 397), where it was held that a dealer in drugs, who sold deadly poison, labeled as a harmless medicine, was liable to a person who, in turn, bought it from an innocent buyer, for an injury arising from its use. It is argued that the doctrine of *Thomas* v. *Winchester* has no application here, because it does not appear that the appliance which caused the accident at Nanuet Junction was intrinsically dangerous to human life, as the bottle of poison was. It is insisted that the principle laid down in that case cannot be invoked where the claim is simply that the machine is out of repair or is defectively constructed or negligently managed. That this view is incorrect is made manifest by the statement of the case in *Smith* v. *The New York and Harlem Railroad Company* (*supra*), where it appears that the jury, in answer to a specific question, found that the death of the plaintiff's intestate was caused by the negligence of the defendant's switch-tender. This shows that the accident, which was the subject of that litigation, was due not solely to a defect in the mechanical appliance of the line, but to the negligence of one of the railway servants as well. Furthermore, we are of opinion that a railway switch, which is either defective in construction or out of repair, is intrinsically dangerous to the lives of passengers transported over that portion of the track upon which the switch is situated, and where it must be used in order to regulate the movement of passenger trains. It is also impossible to distinguish the present case from *Smith* v. *The New York and Harlem Railroad Company,* on the ground that the defendant did not receive any compensation from the New Jersey Railroad Company for the use of its tracks, and was not bound to keep its tracks in repair or to operate the switch for the trains of that company. As to compensation, the proof shows that the defendant made a charge of eighteen dollars a month against the New Jersey and New York Railroad Company for the cost of maintaining the switch, and that this amount was paid. The defendant selected and hired the switchman, and he acted under its orders.

There can be no doubt upon the evidence that the defendant did undertake to keep the track and switch at Nanuet Junction in safe and proper order, and did maintain and control the switch there, and in the absence of any proof to the contrary, it will be presumed that the consideration for so doing was this payment of eighteen dollars a month by the New Jersey and New York Railroad Company. It was not error, therefore, for the court to charge the jury that the defendant owed the plaintiff the duty of keeping its switch in a safe condition, nor was it error to charge that if the negligence of the switchman caused the accident the defendant was liable. As already pointed out, one of the grounds of liability in the Smith case was the negligence of a switchman.

Some exceptions to the admission of certain testimony under objection remain to be noticed. When the defendant's switchman was under cross-examination, he was asked whether he recollected an occasion previous to the accident, in which the plaintiff was injured, when he let the New York and New Jersey train down the Piermont branch. This question was objected to as immaterial, the objection was overruled and an exception was taken. The witness answered that he did remember it, but he was not questioned further on the subject. This ruling is assigned as error, on the ground that evidence of other acts of negligence is not admissible to prove negligence on a particular occasion. Up to this point of his examination the witness had manifested a poor memory as to many important matter upon which he was interrogated, and it is apparent that this question was put rather for the purpose of testing his recollection than with any other view. As soon as he answered that he remembered the incident he was asked nothing more in regard to it, and it is plain that this single question and the response thereto could not have harmed the defendant.

A good deal of testimony was introduced by the plaintiff, under objection and exception by the defendant, as to the condition of the switch some time after the accident, when a new switch stand had been put in and several other parts had been replaced. This evidence was not admissible without proof that in spite of the substitution of the new portions the condition of the switch remained practically the same as it was when the accident happened, so far,

at least, as related to the particular defect which was supposed to have caused the disaster. This was looseness in the fitting together of the various parts of the switch and in its adjustment to the tracks, which produced what is known as "lost motion," and prevented the switch from doing its work completely; so that when operated it did not bring the ends of the rails exactly opposite one another, but produced what the railroad men called a "lip" at the point of meeting. The road-master of the New Jersey & New York Railroad Company examined the switch a few hours after the accident. The changes which have been mentioned had already been made. He found three-quarters of an inch of lost motion. His testimony, however, tended strongly to show that the new standard at this time was in the same position as the old one, and that none of the changes had altered the lost motion, which remained just the same as he had noticed it before the accident. "This switch," he said, "was in the condition that I have testified to — with a lost motion; six years this lost motion has been there." The evidence of the track foreman of the defendant, by whom the new standard and rail were put in, also indicates that nothing was done which would affect the lost motion of the switch. This proof as to the similarity of the reconstructed switch to that which was there when the car was thrown off the track, made it proper to receive evidence as to the defective condition of the switch as it existed after the accident.

The judgment and order should be affirmed with costs.

VAN BRUNT, P. J., and MACOMBER., J., concurred.

Judgment and order affirmed, with costs.