DUCKETT v. POOL.

1. EVIDENCE.—In action to recover damages for enticing away plaintiff's servant, the servant when on the stand as a witness for defendant, was asked on his cross-examination whether he had not admitted his contract of service with plaintiff to two specified persons, at a place and time designated, and he denied that he had. *Held,* that such admissions could be proved in reply for the purpose of contradicting him on a material issue, and thus discrediting his testimony.

2. MASTER AND SERVANT.—A servant must devote his time exclusively to his master's service so far as his contractual duties require, but he may use his unoccupied time for his own purposes, or in the service of another, so far as he can do so without interfering with his obligations to his master.

3. CHARGING JURIES—IMMATERIAL ERROR.—Where the judge charged the jury that to entice a servant to leave the employment of his master was "a violation of our statute for which damages could be recovered," when there is no statute on the subject, but such liability does exist under the common law, the mistake was immaterial.

4. IBID.—This court is not bound to consider alleged error in an omission to charge that which was not requested.

5. ENTICING SERVANT AWAY.—The judge plainly and correctly charged that defendant was not liable for damages for enticing plaintiff's servant away from him if the inducements were offered before the servant had entered into a contract of employment with plaintiff or after its termination.

6. PUNITIVE DAMAGES.—Where the testimony satisfies the jury in an action of tort that the defendant acted maliciously, wilfully, or in wanton disregard of the rights of the plaintiff, they may, in addition to compensatory damages, award other damages, called indifferently exemplary, vindictive, or punitive, by way of punishment to the defendant, and as a means of deterring him and others from committing like wrongful and wanton acts.

Before WALLACE, J., Laurens, February, 1890.

This was an action by Thomas J. Duckett against Martin B. Pool, commenced January 9, 1889. The judge charged the jury as follows:

*Mr. Foreman and Gentlemen:* Counsel on either side have submitted what are called requests to charge. They are always statements of what in the opinion of counsel are legal principles that arise out of the case. I will read them to you, and after that I will in a more connected form undertake to explain to you what the principles involved in this case are. They are, as presented by this case, a little intricate, and it is important that they should be understood.

The plaintiff asks me to charge: "First. That if the jury believe from the evidence that the man Murrell was under contract with the plaintiff, Duckett, and under said contract was to work plaintiff's land under his (plaintiff's) direction and control, and to receive as compensation therefor one-half of the crops, then said Murrell was plaintiff's servant." Well, as a general statement that is true, and I charge you that.

"Second. That if the defendant, Pool, with a knowledge of the said contract induced or caused the man Murrell to leave plaintiff's employment or violate his contract, he committed a wrong, and is liable to plaintiff for such damages as he, plaintiff, sustained by reason of the said Murrell leaving plaintiff's premises." I charge you that.

"Third. That so far as the rights of the plaintiff and defendant

are concerned, it was not necessary that the contract between Duckett and Murrell should be in writing." I charge you that.

"Fourth. That if the jury believe from the evidence that the defendant, Pool, induced or caused Murrell to leave plaintiff's employment, and in so doing knew of the contract and acted wilfully, then he is liable to plaintiff not only for actual damages, but exemplary damages as well. Hiring one's servant after notice of the contract is *prima facie* evidence of enticement." I charge you that. I will have more to say to you about all of these things when we get through.

The defendant asks me to charge you as follows: "First. If Mr. Duckett, the plaintiff, made a verbal contract with Henry Murrell, by the terms of which he was to live on his, Duckett's, farm and work for him for the year of 1889, the terms of that contract must also be such as bound Murrell to give his exclusive personal service to Duckett for the whole period of time agreed upon and under Duckett's direction, or he cannot recover any damages against Mr. Pool in this action; and you must find a verdict for the defendant, because it is necessary that the testimony establish the relation of master and servant before the plaintiff can recover any damages; and in order to do so, when one receives a portion of the crops he produces in lieu of wages, he must be bound to give his exclusive personal service to his employer under his direction, or the relationship of master and servant does not exist, and this action cannot be maintained." I will charge you that, but before I get through I will suggest some explanations and modifications of it.

"Second. If, however, you find that there was a verbal contract between Duckett and the man Murrell, by the terms of which Murrell was bound to render to Duckett his exclusive personal service under his direction for the year of 1889, and that this contract was made or agreed upon by Duckett and Murrell in November, 1888, or at any time previous to the last of December, 1888," and there seems to be no question that if made at all it was in November, 1888. I charge you as matter of law, that such a contract was not binding on Murrell, and he could of his own volition leave the place or employment of Mr. Duckett, either after he had entered his service under the contract for

1889, or before he had done so, and enter the employment of Pool; and he would not be liable to Mr. Duckett for any damages he may have sustained by reason of Murrell's refusing to remain and carry out his part of the contract alleged to have been made for the year 1889. I charge you that, and I will explain it to you more fully before I get through.

Third. "If Pool did induce or entice the man Murrell to leave Duckett's place and employment, and those inducements only contemplated his doing so after his time of service under his contract with Duckett for 1888 had expired, and before he had entered upon his alleged contract for 1889, Pool is not liable to Duckett for any damages he may have sustained by reason of Murrell's abandoning his alleged contract with Duckett for 1889, even though except for his employment by Pool he had no intention of leaving Duckett's service upon the expiration of his term for 1888." I charge you that, with the modification that I will state in my general charge. I charge you what is asked by both sides.

Of course, you all understand that this is an action by Mr. Duckett against Mr. Pool to recover damages from Mr. Pool, because, as is alleged, Mr. Pool enticed Mr. Duckett's servant away from him and thereby injured him, and he therefore brings his action to be reimbursed for any injury he has sustained by reason of such alleged enticement and for what is called exemplary damages; because, as he alleges, Mr. Pool wilfully did him this wrong, he must be punished for it by being compelled to pay exemplary damages, which is more and which is above what would be necessary to remunerate Mr. Duckett for any loss that he had sustained by being induced away. That is the action.

Now, to enable you to apply the testimony to the issues involved, you must know what a servant is, as that term is contemplated by the law. What is a servant? Now, everybody has a general idea what a servant is. In legal contemplation a man is a servant who enters the employment of another and agrees to act under the direction and control of the master, generally for compensation, or to do some specific thing under the control and direction of the master for compensation. Whenever any one does that, he sustains the relation of servant to his employer, and

his employer sustains to him the relation of master. They are master and servant.

Now, in some cases decided by our own Supreme Court—a case adverted to in argument of counsel, one called *Huff* v. *Watkins*,[1] down here in Newberry, another one of *Daniels* v. *Swearengen*,[2] over here in Edgefield—this question as to what was a servant arose, and whether or not an agricultural laborer who worked for a part of the crop upon the land of the landlord was a servant. In those two cases the court held that such a person was a servant, although he worked for a part of the crop, and not for what is called "wages," that is, payment in money. But if he worked for a compensation, or agreed to work under the direction of his employer in the cultivation of a crop for which he was to receive a part of the crop produced by his labor, then he was an agricultural laborer; not only an agricultural laborer, but a servant; and to entice him away from his employer, from his master, was a violation of our statute, for which damages could be recovered.

So the first question you will have to settle in this case as matter of law and fact, does the testimony satisfy you, from what I have stated to you, that this man Murrell was the servant of Mr. Duckett? Was he employed by Mr. Duckett for a part of the crop to work certain lands of Mr. Duckett under Mr. Duckett's direction and control? If he was, he was Mr. Duckett's servant, and to entice him away was a violation of the law. In order to constitute a servant, even an agricultural servant, it is not necessary that he should work the whole year, but the time he should work is to be limited and described by the contract, and for the time limited in the contract he is to be under the control of his employer and under his direction. If he is employed to do certain work upon the farm, and that is the contract, and he is to do it under the direction of his employer, all the time that is necessary to do that work, to perform his contract, why, that time belongs to the master, to the employer. The time outside of that is not embraced in the contract, does not belong to the employer, and for another to employ him during that time

---

[1] 15 S. C., 82.   [2] 6 S. C., 297.

is not a violation of the employer's rights or a violation of our statute.

Now, just to give a simple illustration : suppose a servant was hired by somebody here in town to attend to his horse, and somebody who sleeps to himself hires him at night to cut up wood, too. That is no violation of the contract with the employer, because for all time that is not necessary in the performance of the duties of the contract, the labor incidental to the relation that he sustains to his employer, that time is his own. That is not under contract. He is not bound to render that, or to give an account of that to his employer. So in the cultivation of a crop for a part of the crop under the direction of the employer, all the time that is necessary to perform that contract belongs to the employer, all the time outside of that belongs to the employee. So much for the servant.

Now, what is enticement? Enticement is inducing him to break the contract, no matter what form it takes. If he breaks his contract on account of the conduct of somebody else, why, that somebody else violates the rights of the employer, and is liable to all the penalties and consequences of our statute upon the subject. If you should find here as a matter of fact and of law that Murrell was the servant of Mr. Duckett, and that in consequence of any conduct to that end by Mr. Pool, Mr. Pool knowing of the relation of Murrell to Mr. Duckett, why then he has enticed his servant away, and must take the consequences of his act.

It is alleged here, and was argued to you by counsel, that if this contract was made in November, 1888, that it related to the year 1889, that therefore it was a verbal contract not to be performed within a year, and therefore under a statute that we call the statute of frauds, it was not binding upon the parties. That is so. If a contract is made in this State and rests only in parol, I mean a verbal contract, that is not to be performed within a year, it does not bind the parties. They are not bound by it. And if Mr. Duckett and this man Murrell made a contract for 1889 by word of mouth in November, 1888, it did not bind Murrell and it did not bind Mr. Duckett. Either one of them could disregard, without the other having any right to have damages or

to compel its performance; and that is the law with regard to all verbal contracts, contracts of master and servant, or any other contract. When any verbal contract, a contract resting in parol, is made, if it is not to be performed within a year, that contract does not bind the parties to it. Neither has any legal right under it. Now, you see, this was made in November, and it was to relate to 1889, and that was not to be performed within a year from the date of the contract. It was in November, the year would run out in November, 1889, and this was not to be performed until the expiration of the year 1889.

Now, while neither of the parties to contracts like that has any enforcible legal right under it, still they can go on and perform it if they want to. It is a violation of no law for them to go on and perform the contract if they want to. It is done, and men do it every day. Men make contracts of that sort, and while neither is bound by it, still they both go on and perform. And if there was a contract or hiring, a contract intended to establish the relation of master and servant, of that sort which is not binding upon either party, still both can go on and perform, and a stranger must not interfere to prevent the performance. So if you find that there was a contract of this sort betwixt Mr. Duckett and Murrell, neither was bound by it, and both can go on and perform it, and if Mr. Pool comes in and interferes, and by his interference and on account of his interference Murrell jumps his contract and goes and lives with him, Mr. Pool is just as responsible for his act as if Murrell had been bound by the contract that he had made with Mr. Duckett. Just the same exactly, notwithstanding Murrell was not bound to perform it, notwithstanding he might voluntarily abandon Mr. Duckett's plantation whenever he saw fit, still neither Pool nor anybody else had a right to induce him to do it by any act upon his part, and if you find that in consequence of anything that Mr. Pool did, Murrell left and violated a contract that did not bind him, still Pool is just as liable as if Murrell was bound.

But Murrell had a right to go if he wanted to, notwithstanding the contract, because it was a verbal contract, not to be performed within a year. He had a right to go, and if Murrell went away or out of his own head determined that he would not

perform that contract, no matter what he did as evidence of his determination, if he determined that out of his own head that he would not perform that contract and voluntarily sought other employment, his other employer, if he employed him without any inducement on his part to get Murrell to violate his agreement . with Mr. Duckett, then his employer is not responsible, because the violation of the contract was voluntary upon the part of Murrell, upon the supposition that nobody could be liable for hiring Murrell under those circumstances when no act that the employer had done, had induced Murrell's act or actions in violating his contract with Mr. Duckett. You see the difference, Mr. Foreman.

In order to make this plain : Murrell had a right to go away whenever he wanted to, because the contract did not bind him, because Mr. Duckett says that the contract was made in November, and was to be performed throughout the year 1889. That did not bind Mr. Duckett and did not bind Murrell, and Murrell had a right to go away. He had a right to hire himself to somebody else. He had a right out of his own head to conclude and determine : "I will not perform that contract. I will not stick to it;" and if he did that out of his own head, and went and hired to somebody else, that other employer has committed no offence against the statute of this State or against the common law. Murrell had a right to go, and his employer had a right to hire him. But if Murrell's determination to renounce his contract with Mr. Duckett was induced by the conduct of Pool, and then Pool hires him, Pool is responsible. You see the difference. If the hiring was done upon Murrell's own motion and action, and Mr. Pool had nothing to do with Murrell's determination in violating his contract with Mr. Duckett, then Pool is not liable. If Murrell's conduct in renouncing his contract with Mr. Duckett was induced by any action upon the part of Pool, then Pool is liable. If Pool interfered, he is liable. If Pool did not interfere, and Murrell out of his own head went to Mr. Pool and said, "I am not going to live with Mr. Duckett, I have made up my mind to that, and I want to hire to somebody else," and upon that Pool hired him, Pool is not responsible.

I do not know that there is any other legal principle that it is

necessary that I should state to you. If you think on the law and the facts that the plaintiff is entitled to recover damages, then he is entitled to recover such damages as it has been proven to your satisfaction he has sustained by reason of Mr. Pool's conduct. And if you think that Mr. Pool, knowing of Duckett's rights, wilfully violated them, then it is competent for the jury, if they think proper, to award a larger sum than mere remuneration for the damages that Mr. Duckett has sustained, and that sum in addition to the amount of injury that Mr. Duckett has sustained is called punitive damages—it has got several names, exemplary damages, vindictive damages. That is intended by way of punishment to Mr. Pool for wilfully violating the law and for wilfully violating another man's rights. That is a matter that is left to the jury. It is more largely perhaps in the discretion of the jury than any other matter that is submitted to their consideration. If you do not think that Mr. Duckett is entitled to any damages on the law and the facts, then you simply say, "We find for the defendant." If you find for the plaintiff, you say, "We find for the plaintiff so many dollars and cents," Mr. Foreman, writing out the amount in words, and not stating it in figures. You can retire.

Verdict was rendered for plaintiff for $200, and defendant appealed.

*Mr. W. H. Martin*, for appellant.

*Messrs. Ferguson & Featherstone*, contra.

August 11, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. The action in this case was commenced on the 9th of January, 1889, and its purpose was to recover damages from the defendant, under the allegation that he had enticed an alleged servant of plaintiff, one Henry Murrell, to violate his contract with plaintiff, by leaving his service during the time he had contracted to serve the plaintiff and taking service with the defendant, who knew at the time that said Henry Murrell was under a contract to serve plaintiff as an agricultural laborer for the

year 1889. This being the second appeal in this case, reference may be had to the case as reported in 33 S. C., 238, for a fuller statement of the pleadings and testimony than it is deemed necessary to make here. · The case was heard before his honor, Judge Wallace, and a jury, when a verdict in favor of plaintiff for two hundred dollars having been rendered, and judgment having been entered thereon, defendant appealed upon the following grounds: 1st. Because of error in admitting the declarations of Henry Murrell as to having entered into a contract with plaintiff. 2nd. Because of error in instructing the jury "that it was not necessary, in order to create the relationship of master and servant, that one receiving a share of the crops in lieu of· wages should be bound under his contract to render his exclusive personal service to his employer." 3rd. Because of error in instructing the jury "that to entice a servant to leave his employer was a violation of our statutes, for which damages could be recovered." 4th. Because of error in instructing the jury, "that if, in consequence of anything Mr. Pool did, Murrell left and violated his contract that did not bind him, still Pool is liable," unless his honor had qualified this statement, by stating the time when the inducements must have been offered, and when they contemplated Murrell leaving Duckett's employ. 5th. Because the jury were instructed "that they could award to the plaintiff punitive or exemplary damages." 6th. Because the jury were instructed "that they could award to the plaintiff damages against the defendant by way of punishment."

The first ground of appeal is manifestly misleading, as it seems to be based upon the assumption that the plaintiff was permitted, against the objection of defendant, to offer in evidence the declarations of Henry Murrell to show that he was under contract with the plaintiff, when he left and took service with defendant, which is shown by the "Case" to be an entirely unfounded assumption. For, on the contrary, it there appears that when the plaintiff, in the development of his testimony in chief, undertook to prove the declarations of Murrell in regard to the alleged contract, the question was objected to by· defendant's counsel, and his objection was sustained. Afterwards, when the defendant had offered Murrell as a witness to show that he

had made no contract with plaintiff for the year 1889, and on the cross-examination he had been asked if he had not admitted the contract in a conversation with two specified persons, at a place and time designated, the plaintiff was very properly in reply permitted to prove by the persons thus specified, that he had made such admissions; for the plaintiff having laid the necessary foundation in the cross-examination of Murrell, was clearly entitled to offer in reply evidence to contradict him, and thus discredit his testimony as to one of the material issues in the case. Whether there was a contract between plaintiff and Murrell was certainly a material issue in the case—in fact, was the primal inquiry; and certainly the plaintiff in reply had a right to resort to any of the recognized modes of discrediting the testimony adduced by defendant as to this material issue. This is plainly what was done, and hence the first ground of appeal cannot be sustained.

All of the other grounds impute error to the Circuit Judge in his several instructions to the jury, and it is therefore but fair to the judge that his charge, which is set out in full in the "Case," should be incorporated by the reporter in his report of the case; especially when, as it seems to us, that, with the exception of the fifth and sixth grounds of appeal, which raise the same question, all of the other grounds, unless perhaps it be the third, are based upon a misconception of the charge, which in fact recognizes substantially the positions contended for by appellant in his second and fourth grounds of appeal.

It will be observed that each of the requests to charge submitted by both parties were first set out by the Circuit Judge *in haec verba*, and that every one of them was charged, with certain amplifications, explanations, and modifications given in the general charge, all of which we fully approve. For instance, take the second ground of appeal, which seems to rest upon the idea that to constitute the relation of master and servant, it is necessary that the latter shall be bound by his contract to render his *exclusive* personal service to his employer. Now, the request upon which this ground is based was charged with "some explanations and modifications of it." And these explanations and modifications simply amount to this, that

21—34

the term *"exclusive,"* upon which stress seems to be laid by appellant, is not to be construed as preventing the servant from devoting a part of the time covered by his contract to his own purposes, or even to the service of another, provided he is under an obligation to devote so much of that time as may be necessary to perform properly and in the usual way the service for which he is employed by the master. For example, to vary the illustration used by the Circuit Judge, one who is employed to serve another, even under a written contract, as a farm laborer, for a given period of time, is not debarred from making baskets for his own use or profit at night, when his services as a farm laborer are not expected or required, and his doing so would be no violation of his contract with his master—the test being that he is required to render such service and devote such time as is usual and necessary to perform the work for which he is employed to the master exclusively, and he cannot, without a breach of his contract, devote any of the time in which he ought to be engaged in the service for which he is employed to the service of any one else. This is the only explanation or modification of defendant's second request, and it is plainly warranted both by law and common sense.

The third ground of appeal cannot be sustained; for even conceding that the judge may have erred technically, in saying to the jury that to entice a servant to leave the employment of his master "was a violation of *our statute, for which damages could be recovered,"* inasmuch as no *statute* giving an action for damages in such a case has been brought to our attention, yet it was such an error as could not possibly have prejudiced appellant, and therefore affords no ground for the reversal of the judgment. It was wholly immaterial whether defendant's liability arose by statute or at common law, so far as this case is concerned, and it is not questioned that the act with which defendant was charged, rendered one liable at common law to an action for damages.

It is somewhat difficult to understand the precise point intended to be raised by the fourth ground of appeal. This ground seems to impute an error of omission rather than of commission, and it would be sufficient to dispose of it by say-

ing that there was no distinct request to charge the special proposition there presented; But reading this ground in the light of the argument presented by counsel for appellant, the contention seems to be that the proposition submitted to the jury was erroneous, because it was not accompanied with the qualification contended for. It seems to us, however, that the whole tenor of the charge plainly recognizes this so-called qualification. It is impossible to conceive that the jury should have been led to suppose, from anything contained in the charge, that the defendant would have been liable if he had induced Murrell to enter his employment before he had contracted with plaintiff, or after such contract had terminated. On the contrary, the idea plainly presented by the charge was, that if the defendant, knowing that Murrell was under contract with the plaintiff, induced Murrell to disregard such contract and leave plaintiff's employment before the termination of such contract, the defendant would be liable, unless the contract was terminated by Murrell of his own free will and accord, before any inducement was offered him by the plaintiff to enter his service.. The contract not being in writing, and being an agreement not to be performed within a year, was not under the statute of frauds legally binding upon Murrell, and hence he could, without legal fault, abandon it at any time; but still, as was held under the former appeal in this case, if Murrell was induced by defendant to abandon the contract and enter into the service of defendant, he would be liable; and all this was plainly laid before the jury by his honor, Judge Wallace. We do not think, therefore, that the fourth ground of appeal can be sustained.

It only remains to consider the question presented by the fifth and sixth grounds of appeal, viz., whether in a case of this kind the jury is at liberty to award punitive or exemplary damages, by way of punishment to the wrong-doer, where the testimony shows that the defendant acted maliciously, or in wanton disregard of the rights of the plaintiff. It is not to be denied that there is much conflict of authority elsewhere as to this question—so much so as to lead to quite a celebrated controversy between two eminent text writers, Sedgwick and Greenleaf, which may be found fully set forth in 7 Am. & Eng. Encyc. of Law,

450–477, together with the comments of Mr. Justice Green, of the Supreme Court of West Virginia, favoring the view contended for by Greenleaf. But in that same valuable publication (5 Am. & Eng. Encyc. of Law, 21–23) the other view is presented as best sustained by the authorities. Now, while the writer of this opinion is disposed to think that the weight of the argument is in favor of the view contended for by Greenleaf—that in no case should damages be awarded against a defendant in a civil action, by way of punishment; and that if the quession were entirely an open one, he would be disposed to adopt that view, yet as it requires that the terms "exemplary," "vindictive," "punitive," should be given a signification entirely different from that which they usually and properly bear, it would be a grave question whether a court should take such liberties with the language, for the purpose of protecting a wrong-doer.

But without going into a discussion of this question, it is quite sufficient for us to say that in this State, at least, the doctrine is settled by a long line of unbroken authority, that in an action of tort, where the testimony satisfies the jury that the defendant acted maliciously, wilfully, or in wanton disregard of the rights of the plaintiff, the jury may, in addition to such damages as will compensate the plaintiff for any loss or injury which he may have sustained by the wrongful act of the defendant, either in person, property, or feelings, award other damages, called indifferently exemplary, vindictive, or punitive, by way of punishment to the defendant, and as a means of deterring him and others from committing like wrongful and wanton acts. *Johnson* v. *Hannahan* (3 Strob., 432), where the idea of punishment of the defendant is plainly recognized as one of the elements entering into the assessment of damages. *Spikes* v. *English* (4 Strob., 37), where the same idea is distinctly presented. *Hamilton* v. *Feemster*, 4 Rich., 573; *Wolff* v. *Cohen*, 8 *Id.*, 144; *Rowe* v. *Moses*, 9 *Id.*, 423, where the case of *Chanellor* v. *Vaughn*, 2 Bay, 416, in which it was distinctly held that the jury were at liberty, after considering all the circumstances of the case, to award such damages "as they thought would be commensurate with the nature of the injury, *and such as would effectually check such evil*" (italics ours), was quoted with approval, and O'Neall, J., in delivering the opinion

of the Court of Appeals, adds: "This direction has been, in all subsequent cases, followed, and it may be here remarked that, although the party defendant in assault and battery may be liable both civilly and criminally, yet the damages found on the civil side of the court, if they are regarded as a sufficient punishment, uniformly make the punishment criminally nominal."

In *Windham* v. *Rhame* (11 Rich., 283), which was an action on the case for obstructing a way, the jury were instructed on Circuit that punitive damages might be found in the sound discretion of the jury, "if evil motive or unworthy conduct deserving punishment had been established against the defendant;" and in response to an exception to this instruction, the Court of Appeals expressly affirm the right of a jury in such a case to give damages "by way of punishment." In *Jefcoat* v. *Knotts* (11 Rich., 649), the same doctrine was held, and the case just cited was expressly approved.   So also in *Railroad Company* v. *Partlow* (14 Rich., 237), the same doctrine was recognized, the court citing with approval the cases of *Rowe* v. *Moses* and *Chanellor* v. *Vaughn, supra.*   In *Burckhalter* v. *Coward* (16 S. C., 435), which was an action of slander, the jury were instructed that the damages "should be sufficient to compensate the plaintiff for the injury done him, and to punish the defendant for his wrongful act;" and in response to an exception to this part of the charge, Mr. Justice McGowan, as the organ of the Supreme Court, after stating the general proposition that, in actions of the kind under consideration, the jury were authorized "to give what is called exemplary or vindictive damages," uses this language: "The primary object in such cases is to obtain such a verdict as will compensate the plaintiff for the injury done him, and (to ?) operate as an example to others; but it is also allowable to add something by way of punishment to the defendant."   To same effect see *Epstein & Bro.* v. *Brown,* 21 S. C., 599, and *Hall* v. *Railway Co.,* 28 *Id.,* 261.   In view of this array of authoritative decisions, we have no hesitation in sustaining the instructions to the jury upon the subject of damages.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.