### 7970

### CALDER v. SOUTHERN RY.

1. THE CARRIER AND THE PULLMAN COMPANY ARE JOINTLY LIABLE TO A PASSENGER for assault in his berth and robbery.

2. IBID.—THE SOUTHERN RAILWAY is liable for injury to a passenger on the Southern Railway—Carolina Division.

3. IBID.—IT IS THE DUTY OF PULLMAN COMPANY to keep a proper watch over passengers while asleep in their berths to guard them from robbery and assault, without notice from them of threatened danger.

4. IBID.—PUNITIVE DAMAGES.—There being evidence tending to show a reckless disregard on the part of the Pullman Company of the safety of the sleeping passenger, the issue of punitive damages was properly sent to the jury.

5. MENTAL SUFFERING—IBID.—The charge here cannot be construed to mean punitive damages may be awarded for mental suffering apart from physical injury or assault.

6. WEALTH—IBID.—In cases involving punitive damages the wealth of the defendant is pertinent to guide the jury in giving a verdict sufficient to punish.

Before WATTS, J., Charleston, October, 1910. · Affirmed.

Action by D. B. Calder against Southern Railway Company, Southern Railway—Carolina Division, and The Pullman Company. The Pullman Company appeals on the following exceptions:

"It is respectfully submitted his Honor, the Circuit Judge, erred:

1. "In taking jurisdiction of this case and in refusing the application for an order accepting the petition and bond for

removal; it is submitted that the Court was without jurisdiction to try this case for the reasons stated in the petition for removal and that the cause was removed into the Circuit Court of the United States by the filing of said petition and bond for removal.

2. "In refusing to accept said petition and bond for removal when the petition alleged that the joinder of the resident defendant was fraudulent for the purpose of defeating jurisdiction of the United States Court and when the allegations of the complaint itself show separate and distinct causes of action against each defendant, a separate controversy and a removable case.

3. "In refusing to accept said petition and bond for removal and in taking jurisdiction of said case, because the liability of the lessor railroad company, if any, is not a joint liability with the lessee railroad company, but is contractural and is based upon the lease or statute; further, because the facts alleged show the wrongs complained of were not the joint and concurrent acts of both defendants, and because there was no community in the alleged wrongdoing.

4. " In refusing to accept the petition and bond for removal when the complaint alleged two causes of action, viz.: assault by a third person and loss of property. As to the assault no cause of action is stated because there is no allegation of knowledge of danger or reason to apprehend danger. As to the loss of property it is submitted a railroad company is not responsible for the loss of hand baggage of a passenger in a sleeping car lost by the alleged negligence of the employees of the sleeping car company in not keeping watch. Certainly the imputed liability, if any, would be limited to the lessee company and not to the lessor. The controversy as to The Pullman Company is separable because its liability is direct, while the liability of the railroad company is in one case (if any) imputed and in the other depends upon contract (the lease) and no joint tort is alleged, no community in wrongdoing.

5. "In overruling the demurrer, it is submitted the demurrer to the cause of action alleging the assault upon plaintiff by a third person should have been sustained, because as to that cause of action the complaint fails to state a cause of action in that there is no allegation in said complaint that defendants had any knowledge of the existence of the danger of such unexpected assault or of circumstances from which such danger may have reasonably been anticipated.

6. "In overruling the motion for nonsuit; it is submitted the nonsuit should have been granted because

"There was no evidence to sustain the material allegations of the complaint.

"There was no evidence to sustain the allegation that the defendant, either through negligence or wilfulness, caused any loss or injury to plaintiff.

"The evidence was that whatever loss or injury occurred to plaintiff was due to the wholly unauthorized and unlawful act of a third person coming secretly and suddenly and unexpectedly into the car, for which the defendant is in no way responsible and could not have reasonably foreseen or prevented.

"In any event, the nonsuit as to the cause of action for vindictive damages should have been granted upon the ground that there was no testimony to sustain the allegations of wilfulness or wantonness on the part of the defendant, its servants or agents.

7. "We submit the presiding Judge erred in charging the jury that punitive damages could be awarded in this case, there being no evidence to support such cause of action.

8. "We submit the presiding Judge erred in charging the jury that punitive damages are not only recoverable for a wanton, high-handed, or wilful invasion of plaintiff's rights, but that the jury were authorized to find punitive damages if they believe there was a conscious disregard on the part of the defendant, its agents and servants, to do their duty, a conscious failure to observe due care which was the proxi-

mate cause of the injury. We submit every act of simple negligence is in a sense conscious, and negligence never warrants punitive damages. The only conscious failure to exercise due care which warrants punitive damages must be such a conscious failure as has in contemplation the injurious consequences reasonably to be expected to result from the act.

9. "We submit the presiding Judge erred in charging the 15th request of plaintiff, as follows:

" 'The jury are instructed that where the acts of the servant of a corporation are not only negligent but wanton and wilful, that is, in plain disregard of a known duty or in a conscious failure to observe due care in such case, the jury may award in addition to compensatory damages other damages known as punitive, exemplary or vindictive damages. Such damages are for the purpose of deterring a defendant or other persons, in like conditions, from committing the same wrongs and injuries.'

"By this request wantonness and wilfulness are defined as disregard of a known duty or a conscious failure to observe due care. We submit this is not the law. Before conscious failure to exercise due care will warrant punitive damages it must have in contemplation the injurious consequences to be expected from the act; it must in effect amount to wilfulness or intentional injury.

10. "It is submitted the Circuit Judge erred in first charging the jury that plaintiff could recover 'such damages as you think she has actually sustained by reason of any assault committed on her,' and then charging plaintiff's 5th, 6th, 7th and 8th requests defining technical assault and charging that it was not necessary to touch the person to constitute an assault, that an assault was an attempt to apply even the least actual force, causing apprehension of immediate peril, and then charging plaintiff's 12th request, as follows:

" 'The jury are further instructed that the amount of the damages for mental anguish suffered by the plaintiff, such

as terror and horror of mind, depends upon the circumstances of the case as found by the jury from the evidence, and is to be awarded in their sound discretion.'

"It is submitted that the jury were in effect erroneously charged that fright or 'a well-founded apprehension of immediate peril,' terror, or horror of mind were elements of damage, irrespective of whether the same were caused by applicable physical injury or were the result of assault as technically defined.

11. "We submit that apprehension or fear caused by assault without battery is not an element of damage. The charge of the Circuit Judge was misleading, at least confusing, for though the jury was charged that damages for mental anguish in the absence of bodily injury could not be awarded, yet the jury may well have understood from the charge that horror and terror caused by assault without battery were a basis for damages while other mental anguish was not unless coupled with the bodily injury.

12. "We submit the Circuit Judge erred in refusing the 11th request of defendant, as follows:

" 'I charge you that you cannot hold the defendant liable in this case for the wrongful acts of third persons causing loss or damage to plaintiff unless the defendants, their servants or agents, had knowledge of the danger or of facts or circumstances from which the danger might reasonably be inferred.'

"We submit that the request contained a sound proposition of law applicable to the case and the defendant had the right to have the same charged. The error was emphasized by the presiding Judge saying:

" 'I refuse to charge you that. Whenever a sudden riot breaks out on a train and any one is injured and the *railroad authorities* had no reason to apprehend any danger of that sort, *they* are not responsible; however, I will meet the issue fair and square, etc.,' thereby limiting and restricting the general principle of law to cases of sudden 'riot' and making

the protection apply to 'railroad authorities' alone, although the cases had already been nonsuited as to the railroad companies, defendants.

13. "In refusing the 12th request of defendant, as follows: 'I charge you in this case you cannot find any damages for the alleged assault, but your verdict must be confined to the allegations and proof relating to the loss of property.'

"We submit there was no evidence upon which to hold the defendant liable in damages for the alleged assault.

14. "In refusing the 13th request of defendant, as follows: 'I charge you that in this case you cannot find any punitive damages against the Pullman Company, there being no evidence to sustain that cause of action.'

"We submit there was no evidence to sustain a cause of action for punitive damages, and the charge should have been given.

15. "We submit the presiding Judge erred in refusing the motion for new trial because:

"There was no evidence to support the verdict.

"Because the verdict was contrary to the charge of the presiding Judge.

"Because the damages are excessive.

"Because there was no evidence in this case to support a verdict for vindictive damages.

"Because of error in refusing to charge the 11th, 12th and 13th requests to charge submitted by defendant.

"Because of error in refusing to grant the nonsuit.

16. "We submit the verdict is so excessive in this case as to show, or authorize the inference, that it is the result of prejudice or caprice."

*Mr W. Huger Fitz Simons,* for appellant, cites: *Where the allegation of the petition is that the joinder is fraudulent. the allegations in the complaint do not control:* 200 U. S. 206; 204 U. S. 176; 135 Fed. 657; 130 Fed. 395; 119 Fed.

213; 128 Fed. 88; 57 Fed. 169; 122 Fed. 714. *When the complaint shows separate and distinct causes of action against each defendant the controversy is seperable:* 95 Fed. 368. *Liability of lessor is not joint with lessee:* 140 Fed. 777; 137 Fed. 943; 110 Fed. 803; 131 Fed. 985; 124 Fed. 796; 120 Fed. 389; 122 Fed. 286; 72 Fed. 745. *Carrier is not liable for injury from fellow passenger without knowledge of danger:* 84 S. C. 15; 77 S. C. 434; 78 S. C. 552; 74 S. C. 332; 24 S. E. R. 467; 42 S. E. R. 104; 2 L. R. A., N. S. 105; Fetter, sec. 98; 47 L. R. A. 120; 60 L. R. A. 601; 55 N. Y. 108. *Sleeping car company is not liable as common carrier or innkeeper:* Hutch. Carr. 1331, 1131-2, 1264, 1273; 123 U. S. 61. *Mental suffering to be recoverable must accompany bodily injury:* 84 S. C. 15; 82 S. C. 478; 78 S. C. 559; 57 S. C. 325; 68 S. C. 98; 8 Ency. 661, 663; 13 Cyc. 137, 245. *Verdict induced by passion or caprice should be set aside:* 85 S. C. 470; 88 S. C. 87.

*Messrs. Legare, Holman & Baker* and *J. K. P. Bryan,* contra. *Mr. Holman* cites: *Duty of sleeping car company to its passengers:* 11 L. R. A. 766. *Plaintiff entitled to punitive damages:* 88 S. C. 7; 85 S. C. 483; 74 S. C. 306.

*Mr. Bryan* cites: *Negligence of Pullman Company is negligence of railroad company:* 102 U. S. 451; 139 U. S. 90; 98 F. R. 697; 8 L. R. A. 224; 11 L. R. A. 759. *There was evidence of wilfulness:* 63 S. C. 559; 68 S. C. 13; 79 S. C. 578. *Duty of sleeping car company:* 143 Mass. 267; 58 A. M. R. 135; 1 Flipp. 500; 3 Penn. 78; 11 L. R. A. 759; 8 L. R. A. 224; 120 N. Y. 123; 19 L. R. A. 288; 137 N. Y. 257.

July 12, 1911.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This is an action for damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendants.

The following statement appears in the record:

"This action was commenced on the fifteenth day of May, 1909, by the service of the summons and complaint. Within due time counsel for the defendant, The Pullman Company, filed a petition and bond, for the removal of the case, into the United States Circuit Court.

"Plaintiff moved upon a transcript of the record, in the United States Circuit Court, for an order remanding the case to the State Court. The case was remanded by an order of Judge Brawley, U. S. Judge, made on the 16th day of July, 1909. On October 13, 1910, upon the call of the case for trial in the State Court, counsel for the defendant, The Pullman Company, presented the petition and bond for removal, and asked for an order of removal, pursuant to notice given. After argument, the presiding Judge refused the motion. The case then came on for trial, before the Honorable R. C. Watts, presiding Judge, and a jury on October 13, 1910. After the complaint was read, defendants then read and argued the demurrer thereto, dated and served on the 7th day of April, 1910. The demurrer was overruled. At the close of plaintiff's testimony motions for nonsuit, were made by the defendants. After argument an order of nonsuit was passed as to the defendants, Southern Railway and Southern Railway—Carolina Division, but the Court refused the motion for nonsuit as to the defendant, The Pullman Company. The case went to the jury upon the charge of the Judge, and the jury returned a verdict for the plaintiff, for $7,500 on the 15th day of October, 1910. A motion for a new trial was duly made and refused." The defendant appealed upon exceptions, which will be reported.

The allegations of the complaint, material to the questions involved, are as follows:

"That heretofore on the 6th day of July, A. D. 1908, the plaintiff above named, procured transportation from Charleston, S. C., to Marietta, Ga., over the line of defendants' road and connecting carriers; that she purchased from The Pull-

man Company, in addition to her railroad transportation, a ticket which entitled her to a berth, on one of the sleeping cars of The Pullman Company, from Charleston, S. C., to Atlanta, Ga., scheduled to leave Charleston, S. C., at 11 o'clock p. m.

"That the plaintiff above named, boarded a Pullman car attached to one of the trains of the defendants, and upon entering said Pullman car, retired for the night to her berth; that plaintiff alleges, that when said train reached a point on the line of the defendant's road, at or near Dorchester, a station situated in the county of Dorchester, in said State, on the line of the South Carolina and Georgia Railroad Company, one of the constituent roads above mentioned, she was assaulted by a man in her berth, that he rudely put his hands upon her arms and body, and that he forcibly took her satchel, which she had with her in her berth, together with the contents thereof, and that the same has never been recovered by the plaintiff.

"That at the time said assault was made upon the plaintiff in her berth, she was asleep and was awakened by such assault; that she called loudly for help, but that no response came to her calls, from the officers or agents of the defendants, in charge of said sleeping car, and that the person so assaulting her escaped with her satchel.

"That the defendants above named, were jointly and concurrently negligent, in not keeping a watch over the sleeping passengers in said sleeping car, in that, the conductor and porter of said sleeping car retired for the night, and went to sleep and were in no condition or position, to discover any person attempting to commit robbery in said car, and that the defendants were jointly and concurrently negligent, in allowing the doors of said car to remain open, so that persons from the outside, might have access and entrance thereto; and that the defendants by and through its servants and agents, and by and through their joint and concurrent acts, negligently, wilfully, and wantonly failed to keep a

watch, so as to prevent persons from entering said car from the outside, and to prevent persons within said car from molesting the plaintiff, and depriving her of her property, and committing an assault and insult upon her person. That plaintiff alleges and charges, that it was the duty of the defendants, to keep a reasonable watch over the sleeping passengers in said car; and plaintiff further alleges and charges, that the defendants failed in their duty in this respect, in the manner as above set forth."

The Pullman Company denied all, except the formal allegations of the complaint.

We proceed to the consideration of the exceptions, though not in their regular order.

*Second Exception:* It was the duty of the railroad company, when it accepted the plaintiff as a passenger, to exercise the utmost care and precaution for her safety, until she arrived at her destination. The fact that she, also, became a passenger on the Pullman car, and was asleep in her berth, at the time of the alleged robbery, and technical assault and battery upon her incident to the robbery, did not relieve the railroad company of its responsibility, in this respect. The rule is thus stated in *Pennsylvania Co.* v. *Roy*, 102 U. S. 141: "The law will conclusively presume, that the conductor and porter, assigned by The Pullman Palace Car Company, to the control of the interior arrangements of the sleeping car, in which Roy was riding when injured, exercised such control, with the assent of the railroad company. For the purposes of the contract, under which the railroad company undertook to carry Roy over its line, and in view of its obligation to use only cars, that were adequate for safe conveyance, the sleeping car company, its conductor and porter, were by law, the servants and employees, of the railroad company. Their negligence or the negligence of either of them, as to any matters involving the safety or security of passengers, while being conveyed, was the negligence of the railroad company. The law will

not permit a railroad company, engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping car company, whose cars are used by, and constitute a part of the train, of the railroad company, to throw off the duty of providing proper means, for the safe conveyance of those, whom it has agreed to convey."

This principle is recognized, in the case of *Taber* v. *Ry.*, 81 S. C. 317, 62 S. E. 311, wherein the Court uses this language: "The delict, if any, was a breach of duty by The Pullman Company, since it appertained peculiarly to the contract of that company, to furnish berth accommodations, as distinguished from the defendant's contract, of safe and comfortable transportation."

Not only the assault and battery, but likewise the robbery (which is an offense against the person, as well as against property), endangered the safety of the plaintiff, and rendered both the railroad company and the sleeping car company, liable for such damages as she may have sustained, by the alleged failure of The Pullman Company, to discharge its duty, in properly protecting her person from such dangers, during her hours of slumber.

Therefore, it cannot be successfully contended that the joint liability alleged in the complaint, was sham and pretensive.

*Third Exception:* It is only necessary, to cite the case of *Reed* v. *Ry.*, 75 S. C. 162, 55 S. E. 218, to show that this exception cannot be sustained. In that case it was held, that the Southern Railway Company—Carolina Division, was liable, even to an employee of the Southern Railway Company, its lessee, for negligence and wantonness on the part of the Southern Railway Company, causing injury to such employee.

*Fourth Exception:* Conceding the proposition to be sound, that "a railroad company is not responsible, for the loss of hand baggage of a passenger in a sleeping car, lost by the alleged negligence of the employees of the sleeping

car company, in not keeping watch," nevertheless this exception cannot be sustained, if the allegations of the complaint, are sufficient to constitute a cause of action, based upon the alleged assault and battery; and whether they are sufficient for that purpose will be determined, when we come to the consideration of the next exception.

*Fifth Exception:* The duty imposed upon the sleeping car company (which likewise rests upon the railroad company, in so far as the safety of the passenger may be involved) is thus defined in the case of *Carpenter* v. *Ry.*, 11 L. R. A. (N. Y.) 762:

"A corporation engaged in running sleeping coaches, with sections separated from the aisle only by curtains, is bound to have an employee, charged with the duty of carefully and continually watching the interior of the car, while berths are occupied by sleepers. *Pullman Car Co.* v. *Gardner*, 3 Penny., p. 78. These cars are used by both sexes, of all ages, by the experienced and the inexperienced, by the honest and the dishonest, which is understood by the carriers; and though such companies are not insurers, they must exercise vigilance, to protect their sleeping customers from robbery. A traveler who pays for a berth is invited and has the right to sleep, and both parties to the contract know, that he is to become powerless to defend his property from thieves, or his person from insult, and the company is bound to use a degree of care, commensurate with the danger to which passengers are exposed. Considering the compensation received for such services, and the hazards to which unguarded and sleeping travelers are exposed, the rule of diligence above declared is not too onerous."

The appellant relies upon the doctrine thus stated in 1 Fetter on Carriers of Passengers: "Carriers of passengers, are not insurers of the entire immunity of their passengers, from the misconduct of fellow passengers or of strangers, any more than they are insurers of the absolute safety of passengers, in other respects. Nor can the carrier be held

liable for such misconduct, on the principle of *respondeat superior*, as in the case of the misconduct of his servants. But although the doctrine is of comparatively recent growth, it is now firmly established, that a carrier of passengers must exercise the same high degree of care, to protect them from the wrongful acts of their fellow passengers, or of strangers, that is required for the prevention of casualties, in the management and operation of its train, namely, the utmost care, vigilance and precaution, consistent with the mode of conveyance, and with its practical operation. While not required to furnish a police force, sufficient to overcome all force, when unexpectedly and suddenly offered, it is the carrier's duty to provide help, sufficient to protect the passenger against assaults from every quarter, which might reasonably be expected to occur, under the circumstances of the case and the condition of the parties; and, having furnished such force, the carrier is chargeable with their neglect, in failing to protect a passenger from assaults of strangers. This strict rule of duty must, however, be applied in view of the relation which the carrier sustains to all the passengers, and the circumstances of each particular case calling for its exercise. Knowledge of the existence of the danger, or of facts and circumstances, from which the danger may be reasonably anticipated, is necessary to fix a liability upon the carrier, for damages sustained, in consequence of failure to guard against it."

This language is quoted with approval in *Franklin* v. *Ry.*, 74 S. C. 332, 54 S. E. 578, and the principle is recognized in the subsequent cases of *Anderson* v. *Ry.*, 77 S. C. 434, 58 S. E. 149; *Taylor* v. *Ry.*, 78 S. C. 552, 59 S. E. 641, and *Norris* v. *Ry.*, 84 S. C. 15, 65 S. E. 956. The defendant also relies upon the case of *Connell's Ex'ors* v. *Ry.*, 24 S. E. R. (Va.) 467. In that case the Court uses this language: "Robbery is of frequent occurrence, and larceny more so, and to invite a passenger to enter a sleeping car with his property, and to go to sleep in the confidence, that his person

and property will be shielded and protected by those, who have undertaken that duty, imposes a very high degree of care and watchfulness, upon the sleeping car company. Passengers are invited to enter and to sleep. They are thereby disarmed and incapacitated for self-protection. Carriers are paid to preserve, watch and ward over their sleeping guests, and they are rightfully held, to a due and faithful discharge of the obligations thus assumed. Experience teaches us that when property is exposed to theft, it is apt to be stolen; but murder is of infrequent occurrence.

"When, therefore, a sleeping car company receives a passenger, and he retires to rest, it may well be assumed to anticipate, and be required to protect him against a crime, which is likely to occur, whenever the temptation and the opportunity are presented. It cannot be deemed to have anticipated, nor be expected to guard and protect him against a crime, so horrid and happily so rare, as that of murder."

The rule that the duty of the carrier to a passenger, from the wrongful acts of a fellow passenger or stranger, only applies when the carrier has knowledge of the existence of the danger, or of facts and circumstances from which the danger may be reasonably anticipated, is not applicable to passengers asleep in their berths. The principle announced in *Franklin* v. *Ry.*, 74 S. C. 332, 54 S. E. 578, and the subsequent cases was applied, where the facts were quite different from those in the present case, and in none of them, were the rights of a sleeping passenger involved. In the case of passengers, other than those in sleeping cars, it may reasonably be expected, that they will be able to give notice of the necessity for protection, but knowledge of the fact, that a passenger is asleep in his berth, is, in itself, notice of the necessity for taking proper precautions to safeguard him, as, at that time, he may be presumed to be powerless, to give notice of threatened danger.

In the present case the testimony shows, that The Pullman Company recognized the necessity for guarding the safety of

the passengers, even before receiving notice of danger, or of facts from which danger might reasonably be anticipated. by requiring either the conductor or the porter to be on duty, during the entire time the passengers are asleep, for the purpose of giving them protection generally, without reference to any particular danger to a passenger.  Therefore it is evidence of negligence for the sleeping car company, to fail to keep a proper watch, even before it has other notice of the danger, or of such facts as are sufficient to cause it to anticipate danger, to a particular passenger.

In regard to the case of *Connells Ex'ors* v. *Ry.*, 24 S. E. R. (Va.) 467, we would say, that in so far as it announces the principle, that robbery is a danger to the safety of the passenger, which a sleeping car company should guard against, states the principle correctly.  But if it is to be construed as ruling, that a sleeping car company cannot be held liable for damages, when a passenger is murdered by a stranger, although both the conductor and porter went to sleep, leaving the passengers unprotected, on the ground that murder was a danger not reasonably to be anticipated, then such a rule is not to be followed.  We, however, do not think the Court intended to go to that extent, as it did not appear in that case, that the sleeping car company had failed to keep a general watch, over the passengers.  Therefore, that case cannot be regarded as authority for the proposition, that it is not the duty of a sleeping car company, to take proper care to keep a watch over its passengers, even before it has notice of danger, or of circumstances sufficient to put it on inquiry, which if pursued with due diligence, would lead to knowledge of the danger.

*Sixth Exception:* There was testimony tending to sustain the allegations of the complaint, as to the failure of the servants of The Pullman Company, to keep a watch while the plaintiff was asleep in her berth, and the said allegations, show a reckless disregard of the plaintiff's safety, and that there was a conscious failure, on the

part of The Pullman Company's servants, to discharge their duty. It cannot therefore, be successfully contended, that the testimony did not show that the plaintiff, was entitled to compensatory as well as punitive damages.

*Seventh and Eighth Exceptions:* These exceptions cannot be sustained, for the reason, that the charge conformed to the rule announced, in the cases of *Pickens* v. *Ry.,* 54 S. C. 498, 32 S. E. 567; *Myers* v. *Ry.,* 64 S. C. 514, 42 S. E. 598, and *Sullivan* v. *Ry.,* 74 S. C. 377, 54 S. E. 586.

*Tenth Exception:* His Honor, the presiding Judge, charged the following request, which was presented by the appellant's attorneys, "The law in this State, does not allow recovery of damages, for mental suffering, in the absence of bodily injury, in a case of this kind, and I charge you, that if you believe from a preponderance of the testimony, that plaintiff received no bodily injury, then no damages for mental suffering are allowed." There are other portions of the charge to the same effect. This clearly shows that the exception cannot be sustained.

*Sixteenth Exception:* C. C. Freat, a witness for the appellant, thus testified, on cross-examination:

"As you say, you are superintendent of this district? Charleston district and the territory adjacent to Charleston. How many districts had The Pullman Company in the United States? I am not sure, offhand, I suppose twenty-five or thirty. It takes in the whole territory of the United States? Yes, sir; practically so. They run Pullman cars throughout the whole United States? Yes, sir."

The reasonable inference from this testimony is, that The Pullman Company, is an exceedingly wealthy corporation.

"In cases involving the doctrine of punitive damages, it is very generally held, that evidence of the defendant's wealth and pecuniary ability, is admissible. The reason of the rule, admitting evidence of the defendant's wealth and pecuniary ability, rests in the consideration that a pecuniary

mulct, which would operate as a sufficient punishment, to a man of small means, would be inadequate in the case of a person of great wealth, and what would be a proper penalty in the latter case, would be excessive and immoderate in the former. The rule admitting such evidence is indeed, it has been said, a fair corallary of the rule of exemplary damages." 12 Enc. of Law 47; *Rowe* v. *Moses,* 9 Rich, 423; *Burckhalter* v. *Coward,* 16 S. C. 435; *Harris* v. *Marco,* 16 S. C. 575; *Duckett* v. *Pool,* 34 S. C. 311, 13 S. E. 542.

The appellant has failed to satisfy this Court, that the verdict was the result of prejudice or caprice.

This exception cannot therefore be sustained.

The exceptions which have not been considered specifically, have either been disposed of, by what was said in considering the other exceptions, or are too general.

Judgment affirmed.